IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lori Ann Caler, | ) | C/A No.: 1:14-1565-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

        A.      Procedural History

On February 16, 2011, Plaintiff filed an application for DIB in which she alleged her disability began on January 14, 2011. Tr. at 90–93. Her application was denied initially and upon reconsideration. Tr. at 58–61, 63–64. On October 25, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Thomas F. Batson. Tr. at 21–53

(Hr'g Tr.). The ALJ issued an unfavorable decision on December 7, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 9–20. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 21, 2014. [ECF No. 1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 53 years old at the time of the hearing. Tr. at 25. She completed the eighth grade. *Id.* Her past relevant work ("PRW") was as an assembler and a machine operator. Tr. at 131. She alleges she has been unable to work since January 14, 2011. Tr. at 31.

2.     Medical History

Plaintiff presented to Rebecca M. Hopkins, M.D. ("Dr. Hopkins"), on January 14, 2011, and complained that she experienced pain in her left leg that radiated into her foot during periods of excessive walking. Tr. at 175. Dr. Hopkins observed Plaintiff to have stable vital signs, be in no acute distress, and have no tenderness to palpation in her left groin. *Id.* She noted that extension of Plaintiff's leg caused pain and that straight-leg raise was positive, but that Plaintiff's sensory exam, deep tendon reflexes, and pulses were normal. *Id.* She ordered x-rays of Plaintiff's hip and pelvis and prescribed Tylenol #3. *Id.* An x-ray of Plaintiff's left hip on January 17, 2011, revealed mild degenerative changes. Tr. at 176.

On January 21, 2011, Plaintiff complained to Dr. Hopkins of left hip pain. Tr. at 174. Dr. Hopkins explained to Plaintiff that her x-rays showed mild degenerative changes in her left hip. *Id.* Dr. Hopkins assessed osteoarthritis and prescribed Diclofenac 75 milligrams to be taken twice daily and Tylenol #3, to be taken every four to six hours for pain. *Id.*

Plaintiff visited Amir Agha, M.D. ("Dr. Agha"), on February 23, 2011. Tr. at 178. Dr. Agha observed Plaintiff to be 5'3" tall and to weigh 153 pounds. Tr. at 179. Dr. Agha noted degenerative changes in Plaintiff's hands, tenderness in her low back, mild to moderate decreased range of motion in her left hip, antalgic gait, limp, and degenerative changes in her knees. *Id.* Dr. Agha's examination indicated no abnormalities in Plaintiff's neck, elbows, shoulders, and right hip. *Id.* He indicated Plaintiff had normal range of motion in her back and no swelling. *Id.* Dr. Agha requested an MRI of Plaintiff's left hip to rule out avascular necrosis and instructed Plaintiff to stop smoking. *Id.*

Plaintiff followed up with Dr. Agha on March 8, 2011, for left hip pain. Tr. at 181. Dr. Agha indicated an MRI showed joint effusion, left greater than right, and suggested osteoarthritis. Tr. at 181. He indicated Plaintiff had mild pain on range-of-motion tests. *Id.*

On April 29, 2011, state agency physician Dale Van Slooten, M.D., completed a physical residual functional capacity evaluation in which he indicated Plaintiff was limited as follows: occasionally lifting and/or carrying 50 pounds; frequently lifting and/or carrying 25 pounds; standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday; sitting (with normal breaks) for a total of about

six hours in an eight-hour workday; and occasionally climbing ladders/ropes/scaffolds, kneeling, crouching, and crawling. Tr. at 182–89.

On July 29, 2011, state agency medical consultant Frank Ferrell, M.D., completed a physical residual functional capacity assessment in which he indicated Plaintiff had the following restrictions: occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday; sitting (with normal breaks) for a total of about six hours in an eight-hour workday; occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; and occasionally stooping and crawling. Tr. at 191–98.

C.    The Administrative Proceedings

1.    The Administrative Hearing

At the hearing on October 25, 2012, Plaintiff testified she stopped working at Clarion in 2010 because of arthritis in her hip. Tr. at 28. She indicated she had been sent home from work on three occasions because her leg gave out. Tr. at 31, 50.

Plaintiff testified she had pain in her left hip. Tr. at 30. She indicated she experienced low back pain once every week or two. Tr. at 36. She stated she had difficulty sitting and standing. Tr. at 32. She indicated she could sit for two hours on a good day and for 20 minutes on a bad day. Tr. at 33. She stated she could stand for five minutes and then return to a seated position. *Id.* She indicated she could walk for less than ten minutes at a time. Tr. at 43. Plaintiff stated she could lift five to ten pounds and was able to lift a laundry basket and a gallon of milk. Tr. at 48–49. She testified that she needed to lie down on bad days, which occurred two to three times per week. Tr. at 34–

4

35. Plaintiff indicated that she could work for half of a day on a good day and a quarter of a day on a bad day. *Id.* She stated she had used a cane to walk for over a year, but that it was not prescribed by a physician. Tr. at 30. She testified she used the cane at all times, even when moving about her house. Tr. at 44. She stated her cane was sufficient and that she did not believe she needed a walker. Tr. at 44–45.

Plaintiff testified she was 5'4" and weighed 190 pounds. Tr. at 43–44. She indicated she had gained 50 pounds since she stopped working. Tr. at 44.

Plaintiff testified she was not receiving medical treatment because she did not have insurance. Tr. at 29, 35. When asked if she would have continued treatment if she had insurance, Plaintiff responded "possibly." Tr. at 29. Plaintiff testified she took Nyquil to sleep, but denied taking any other prescription or over-the-counter medications. Tr. at 45.

Plaintiff testified she awoke between 6:30 a.m. and 7:00 a.m., let her dog outside, and returned to bed until around 9:00 a.m. Tr. at 37. She stated she watched television between 9:00 a.m. and lunchtime while reclined in a chair. Tr. at 37–38. She indicated she typically walked next door to her aunt's house to visit for an hour or so during the afternoon. Tr. at 38. She stated that she sat and watched television when she returned home. *Id.* Plaintiff testified she went to bed between 10:00 p.m. and 12:00 a.m. and had difficulty sleeping. Tr. at 39–40.

Plaintiff testified she lived with her 76-year-old mother. Tr. at 40. She indicated her mother shopped for groceries and that she would not go with her mother because she was unable to walk through the store. Tr. at 40–41. She indicated she did not go out often

because of difficulty walking. Tr. at 41. She stated she had a driver's license and drove around town. Tr. at 45–46. She indicated she swept and mopped the kitchen floor, but was unable to vacuum. Tr. at 47. Plaintiff stated she washed dishes, but did not cook. Tr. at 47–48. She indicated she did her laundry once a week. Tr. at 48.

Plaintiff testified she last worked on January 14, 2011. Tr. at 51. She indicated she subsequently drew unemployment compensation and continued to receive benefits. *Id.* She stated she searched for other work, but had no success because she did not have a GED and was unable to stand without using her cane. Tr. at 49. Plaintiff denied attempting to obtain services through the vocational rehabilitation department. Tr. at 51–52.

     2.     The ALJ's Findings

In his decision dated December 7, 2012, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
2. The claimant has not engaged in substantial gainful activity since January 14, 2011, the alleged onset date (20 CFR 404.1571 et seq.).
3. The claimant has the following severe impairments: osteoarthritis in left hip (20 CFR 404.1520(c).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk each up to 6 hours in an 8-hour workday; occasionally climbing of ramp/stairs, ladder/rope/scaffolds; occasionally stooping and crawling.

6. The claimant is capable of performing past relevant work as a machine operator and assembler. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2011, through the date of this decision (20 CFR 404.1520(f)).

Tr. at 14–17.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ failed to fully develop the record;

2) the ALJ did not properly consider Plaintiff's statements regarding her pain;

3) the ALJ failed to adequately consider Listing 1.02;

4) the ALJ improperly considered Plaintiff's receipt of unemployment compensation; and

5) the ALJ erroneously considered Plaintiff's failure to obtain medical treatment.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings

of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157– 58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    ALJ's Duty to Develop the Record

Plaintiff argues the ALJ neglected his duty to fully develop the record by failing to refer her for an MRI to rule out avascular necrosis of her hip. [ECF No. 15 at 5]. The Commissioner argues the ALJ satisfied his duty to develop the record and that the record

contained sufficient evidence to allow the ALJ to make a determination. [ECF No. 16 at 7].

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173, citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). To fulfill this duty, the ALJ may refer a claimant for a consultative examination to resolve inconsistencies in the evidence or when the medical evidence is insufficient to allow the ALJ to make an informed decision on the claim. 20 C.F.R. § 404.1519a(b). The SSA may purchase consultative examinations to obtain clinical findings, laboratory tests, diagnoses or prognoses under the following non-exclusive circumstances:

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical source; or
>
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

*Id.*

The undersigned recommends the court find the ALJ fulfilled his duty to develop the record. An ALJ is directed to refer a claimant for a consultative examination or

additional testing if the evidence of record is insufficient to allow him to make an informed decision on the claim. 20 C.F.R. § 404.1519a(b). However, 20 C.F.R. 404.1519a(b) does not require that ALJs refer claimants for consultative examinations merely where the treatment records indicate relatively minor impairments or benign findings. "While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'to go to inordinate lengths to develop a claimant's case.'" *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision), citing *Thomas v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977). It is the claimant's burden to produce evidence of disability. *See Hall v. Harris,* 658 F.2d 260, 264–65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The undersigned notes that Plaintiff was represented throughout the administrative process and Plaintiff's counsel did not question the adequacy of the evidence prior to the ALJ's decision or request that Plaintiff be referred for additional testing. *See Mink v. Apfel*, 215 F.3d 1320, 2000 WL 665664, at *1 (4th Cir. 2000) (unpublished table decision) (holding that an ALJ did not fail to properly develop the medical record where the plaintiff "was represented at the hearing by counsel, who could have easily submitted the disputed documents"). Here, the evidence was sufficient to allow the ALJ to make an informed decision. It showed Plaintiff had mild osteoarthritis. In light of the foregoing, the undersigned recommends the court find the evidence of record was sufficient to allow the ALJ to make an informed decision on the claim.

12

The undersigned further recommends the court reject Plaintiff's argument that the ALJ erred in failing to refer Plaintiff for an MRI of her left hip. Plaintiff argues that Dr. Agha recommended an MRI of her left hip to rule out avascular necrosis and the record contains no MRI report or evidence that she had an MRI. [ECF No. 15 at 5]. However, the record contains a notation from Dr. Agha that indicated Plaintiff's MRI showed osteoarthritis—not avascular necrosis. *See* Tr. at 181. The ALJ acknowledged the MRI report in his decision. *See* Tr. at 16 ("A magnetic resonance image (MRI) of the left hip shows osteoarthritis but no other problem. (Exhibits 2F–3F)"). Because the requested evidence was contained in a medical report already in the record, it was not necessary for the ALJ to refer Plaintiff for additional testing. *See* 20 C.F.R. § 404.1519a(b)(1).

2.     Plaintiff's Statements Regarding Pain

Plaintiff argues the ALJ erred in disregarding her statements about her pain in light of evidence of an impairment that would produce the alleged pain. [ECF No. 15 at 5–6]. The Commissioner maintains the ALJ cited significant evidence to support his credibility finding. [ECF No. 16 at 8–9].

Allegations of pain or other symptoms in the absence of medical signs and laboratory findings demonstrating the existence of a medically-determinable impairment cannot be the basis for a disability finding. SSR 96-7p. The ALJ should only consider the intensity, persistence, and functionally-limiting effects of symptoms after the claimant has established the existence of a medically-determinable impairment. *Id.* "[T]he adjudicator must carefully consider the individual's statement about symptoms with the rest of the relevant evidence in the case record" in determining whether the claimant's

statements are credible. *Id.* To assess the credibility of the claimant's statements, the ALJ

"must consider the entire case record, including the objective medical evidence, the

individual's own statements about symptoms, statements and other information provided

by treating or examining physicians or psychologists and other persons about the

symptoms and how they affect the individual, and any other relevant evidence in the case

record." *Id.* The ALJ cannot disregard the claimant's statements about symptoms merely

because they are not substantiated by objective medical evidence. *Id.* Furthermore, the

ALJ must specify his reasons for the finding on credibility, and his reasons must be

supported by the evidence in the case record. *Id.* The ALJ's decision must clearly indicate

the weight accorded to the claimant's statements and the reasons for that weight. *Id.*

The undersigned recommends the court find the ALJ properly considered

Plaintiff's statements regarding her pain as part of his overall assessment of her

credibility. The medical evidence indicated the presence of mild osteoarthritis in

Plaintiff's left hip. Tr. at 174, 181. Having found Plaintiff had an impairment capable of

producing the alleged symptoms, the ALJ properly considered the intensity, persistence,

and functionally-limiting effects of Plaintiff's impairment. *See* Tr. at 15–16. His decision

indicated the weight he accorded to Plaintiff's statements and the reasons for that weight.

*Id.* The ALJ indicated the following regarding Plaintiff's credibility:

> [T]he claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the above
> residual functional capacity assessment.

Tr. at 15. The Fourth Circuit recently held that "this boilerplate language 'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio v. Colvin*, No. 13-2088, 2015 WL 1219530, at *5 (4th Cir. March 18, 2015); *citing Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, the court further indicated the ALJ's error would be harmless if he properly analyzed credibility elsewhere. *Id.* at *6. Here, the ALJ did not merely use the boilerplate language to support his decision, but further cited multiple reasons for his credibility finding, rendering his error harmless. *See* Tr. at 15–16. He considered Plaintiff's testimony and her allegations, but concluded that the evidence did not support the severity of the symptoms and restrictions that she alleged. Tr. at 15–16. He found Plaintiff's receipt of unemployment benefits was inconsistent with her allegation of disability. Tr. at 16. He indicated Plaintiff's testimony that she was looking for work to accommodate her problem suggested she did not consider herself disabled. *Id.* The ALJ wrote that Plaintiff initially obtained conservative treatment and that her pain was relieved with prescription medication at that time. *Id.* He cited relatively benign objective evidence of Plaintiff's impairment. *Id.* He acknowledged that the record only contained treatment notes for the period from January through March 2011 and determined that Plaintiff's lack of medical treatment in over a year and the fact that she was not on any medication suggested her pain was not severe enough to be considered disabling. *Id.* He found Plaintiff's daily activities were self-limited. *Id.* Because the ALJ cited significant evidence to support his credibility finding, the undersigned recommends the court find he properly analyzed Plaintiff's credibility.

15

3.    Listing 1.02

Plaintiff argues the ALJ erred in denying her claim, in part, because he found that it did not meet a listed impairment. [ECF No. 15 at 6]. The Commissioner contends the ALJ did not deny the claim because Plaintiff's impairment did not meet a listed impairment, but rather denied the claim because Plaintiff had the ability to perform her PRW. [ECF No. 16 at 10].

"At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment or continues the analysis." *Mascio v. Colvin*, 2015 WL 1219530, at *1. "The ALJ cannot deny benefits at this step." *Id.*

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a).

Listing 1.02 provides in pertinent part:

1.02 Major Dysfunction of a joint(s) (due to any cause):
Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness

with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, §1.02.

"Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. *Id.* The Listing provides a non-exclusive list of examples of ineffective ambulation, which include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, §1.00B2b(2).

The undersigned recommends the court find the ALJ's step three finding to be supported by substantial evidence. To meet or equal Listing 1.02, the evidence must show that Plaintiff had dysfunction of a major weight-bearing joint and that it resulted in "inability to ambulate effectively" or that her impairment was at least equal in severity and duration to the criteria of Listing 1.02. *See* 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, §1.02; 20 C.F.R. § 404.1526(a). The ALJ indicated Plaintiff's hip impairment did not meet the criteria for Listing 1.02, "as there is no evidence of a major dysfunction of the hip and the inability to ambulate effectively." Tr. at 14. The ALJ's conclusion was

supported by the evidence of record. The ALJ indicated Plaintiff did not have a gross anatomical deformity of her left hip, as the MRI showed only osteoarthritis and physical examination indicated mild to moderate decreased range of motion, antalgic gait with a limp, and no motor deficits. Tr. at 16. The ALJ considered Plaintiff's testimony that she had used a cane for a year, but noted that "it was not prescribed." Tr. at 15. The ALJ noted that Plaintiff did not require the use of an assistive device when she was examined in March 2011. Tr. at 16. He found that Plaintiff's daily activities were "self-limited, as no physician has restricted her activities in any way and she continues to look for work within her physical tolerance." *Id.* He further noted "[t]here is no objective medical evidence to support the claimant's limited ability to lift, sit, walk, and stand as alleged." *Id.* The ALJ's conclusion at step three was also supported by Plaintiff's testimony. She testified her cane provided sufficient support and that she did not believe she needed a walker. Tr. at 44–45. She also indicated she did not use a motorized cart in stores because she did not think she was "that bad." Tr. at 41. In light of the foregoing, the ALJ's conclusion that Plaintiff's impairment did not meet or equal Listing 1.02 is supported by evidence that suggests Plaintiff did not have gross anatomical deformity of her left hip and retained the ability to ambulate effectively.

The undersigned further recommends a finding that the ALJ did not deny the claim based upon his finding at step three of the sequential evaluation process. Although he determined Plaintiff's impairment did not meet or equal a Listing, he proceeded to steps four and five of the sequential evaluation process in which he assessed Plaintiff's RFC and concluded she could perform her PRW. *See* Tr. at 14–17.

4.      Plaintiff's Receipt of Unemployment Compensation

Plaintiff argues the ALJ erred in denying her claim based upon her receipt of unemployment compensation. [ECF No. 15 at 7]. The Commissioner argues that, in assessing Plaintiff's credibility, the ALJ appropriately considered the inconsistency between Plaintiff's statements to the Social Security Administration ("SSA") that she was unable to work and her statements to the state unemployment agency that she was able to work. [ECF No. 16 at 8–9].

Disability benefits cannot be denied solely on the ground that a claimant received unemployment benefits. *See Cook v. Astrue*, C/A No. 0:11-1625-JFA-PJG, 2012 WL 1658923 at *4 (D.S.C. April 19, 2012), *adopted by* 2012 WL 1660659 (D.S.C. May 11, 2012). However, it is appropriate for an ALJ to consider a claimant's receipt of unemployment compensation and the certifications that she made to a state agency to receive those benefits as one of many factors in assessing her credibility. *See McCray v. Colvin*, C/A No.: 13-173-SVH, 2014 WL 3798835 at *15 (D.S.C. July 31, 2014); *Richwalski v. Colvin*, C/A No.: 6:13-132-MGL, 2014 WL 2614105 at *10–11 (D.S.C. June 9, 2014); *Brannon v. Astrue*, C/A No.: 1:11-1568-SVH, 2012 WL 3842572 at *11–12 (D.S.C. Sept. 4, 2012). "While receiving unemployment benefits may not *always* preclude a finding of disability, it is among the many factors that may well support a determination that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability." *Clark v. Astrue*, 2012 WL 6728441 at *3 (W.D.N.C. 2012) (emphasis in original); *see Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (finding "claimant's

decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work" is a factor that may be considered in determining credibility); *see also Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (holding that "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability").

The undersigned recommends the court find that the ALJ considered Plaintiff's receipt of unemployment benefits as one of many factors in his credibility assessment. The ALJ did not determine Plaintiff's statements lacked credibility merely because she received unemployment benefits. Rather, he cited multiple reasons for his credibility finding, and Plaintiff's receipt of unemployment benefits was among the factors cited. *See* Tr. at 16. Therefore, the undersigned recommends a finding that the ALJ properly considered Plaintiff's receipt of unemployment benefits.

### 5.    Failure to Obtain Medical Treatment

Plaintiff argues the ALJ considered her failure to obtain medical treatment without properly considering her reasons for not obtaining treatment. [ECF No. 15 at 7]. The Commissioner maintains that the ALJ considered Plaintiff's assertion that she did not seek medical treatment because she had no insurance, but found that Plaintiff failed to seek low-cost or free sources. [ECF No. 16 at 11].

To obtain benefits, a claimant must follow all prescribed treatment that can restore her ability to work and failure to follow prescribed treatment without good cause will result in a finding that the claimant is not disabled. 20 C.F.R. §§ 404.1530(a),(b), 416.930(a),(b). Furthermore, "the individual's statements may be less credible if the level

or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p. The ALJ is prohibited from drawing negative inferences about the claimant's credibility without considering her explanations as to her reasons for noncompliance and other evidence in the record that may explain infrequent or irregular medical visits or failure to seek medical treatment.[3] *Id.* An ALJ cannot deny a claimant benefits based on the claimant's failure to obtain treatment she cannot afford. *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984).

The ALJ indicated the following:

> The record shows no medical treatment for the claimant's hip impairment since March 2011 and she testified she had not received any medical treatment since then because she has no insurance. Although the claimant may not have medical insurance or ability to pay for medical treatment, it is reasonable to presume that if pain and limited functioning was debilitating as alleged that she would have sought medical treatment from other sources such as the county Health Department.

Tr. at 16.

The undersigned recommends the court find the ALJ properly considered Plaintiff's explanation for her failure to obtain medical treatment, determined there was no good reason for the failure, and concluded that her statements were less credible

---

[3] Some explanations that may provide insight into the claimant's credibility include the following: that the claimant has structured her daily activities so as to minimize symptoms, that the claimant's symptoms are relieved with over-the-counter medications, that the claimant avoids taking medications because of the side effects, that the claimant is unable to afford treatment and lacks access to free or low-cost services, that the individual has been advised by medical sources that no further effective treatment can be undertaken, and that medical treatment is contrary to the teaching and tenants of the claimant's religion. SSR 96-7p.

because her frequency of treatment was inconsistent with her level of complaints. The ALJ found that, if Plaintiff's pain and limited functioning were as debilitating as she alleged in her testimony, she would have availed herself of a free or low-cost health provider. *Id.* Plaintiff requests that this court take judicial notice of the services offered by Plaintiff's local health department and argues that it offered no services to treat Plaintiff's impairment. [ECF No. 15 at 7–10]. A court may take judicial notice of factual information located in postings on government websites. *See Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("court may take judicial notice of matters of public record"). The undersigned has reviewed the specified services and finds Plaintiff's argument unavailing. Plaintiff's county health department offered several services that might have accommodated Plaintiff's needs, including services and programs for "arthritis prevention and control," "injury prevention," and "obesity prevention." *See* ECF No. 15 at 9–10; *see also* South Carolina Department of Health and Environmental Control. *Public Health*; [accessed 1 April 2015]. Available from: www.scdhec.gov. Without delving further into the services provided, the undersigned is unable to confirm that Plaintiff would have been eligible for these services or that they would have addressed her needs. However, it is unnecessary to inquire further because Plaintiff did not testify and does not argue that she attempted to avail herself of free or low-cost medical services. While she indicated she was not receiving medical treatment because she did not have insurance, she provided a noncommittal response to the question of whether she would have continued to obtain medical treatment if she had insurance. *See* Tr. at 29 (When asked if she would have continued treatment if she had insurance,

22

Plaintiff stated "possibly."). The undersigned recommends the court find substantial evidence supports the ALJ's conclusion that Plaintiff's statements were less credible because her frequency of treatment was inconsistent with her level of complaints. *See* SSR 96-7p.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

April 1, 2015                                                   Shiva V. Hodges
Columbia, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).